## Commonwealth v. Trunzo

*Martin J. King,* for appellant.
*Michael S. Goodwin,* for Commonwealth.

BIESTER, JR. *J.,* January 28, 1981—This case has been appealed to the Commonwealth Court. Defendant was found guilty of operating a motor vehicle under suspension of his license privileges in violation of section 1543(a), of the Vehicle Code, 75 Pa.C.S.A. §1543(a), by District Justice Clyde C. Leaver. He appealed to this court and after trial de novo before the undersigned on October 31, 1980 he was found guilty of operating a motor vehicle while his operating privileges were under suspension.

The contentions raised by defendant are two-fold. First that the Commonwealth did not prove beyond a reasonable doubt that defendant had notice of his suspension and secondly that one may not be charged with operating while under suspension until the operator/defendant has physically surrendered his operator's license to the Pennsylvania State Police.

The operating record of defendant was received into evidence without objection and it indicates that the operating privileges of defendant were suspended, effective April 3, 1979 for a period of six months. This action was based on his conviction on July 11, 1978 of the offense of operating while under suspension. Notice of the suspension in the instant case was mailed to defendant on February 27, 1979 to the address which appeared on defendant's operator's license, to wit, 564 Sugar Bottom Road, Furlong, Pa. 18925. There is no indication in the record that defendant attempted to inform the Commonwealth of any change of address. Defendant's testimony with respect to receipt of notice and to his address is equivocal and is as follows:

"Q. Mr. Trunzo, where did you reside in September of 1979?

A. When, September—

Q. '79.

A. 100—excuse me, that's wrong. I don't really remember the address, Sacketts Ford Road in Richboro.

Q. You weren't living on Sugar Bottom Road in Furlong?

A. No, I wasn't.

Q. Who lives there?

A. My parents.

Q. At that time did you receive your mail from your parents?

A. Some I would, others would go to the post office.

Q. You had a post office box?

A. Yes.

Q. Did you have difficulty with your mail in 1979?

A. Yes, I did.

Q. Would you please relate to the Court what your difficulty was?

A. Well, I was getting some mail at the post office and some at my mother's, and my mother would give it to my sister, and I guess I missed some of it too.

Q. Specifically, that which has been previously marked, I ask you to review those notices and tell me whether or not you received those particular notices of suspension?

A. No, I don't believe so.

Q. You were under suspension at other times for other notices and violations; is that correct?

A. Yes.

Q. In 1979 were you in physical possession of your driver's license?

A. Yes, I was.

Q. And is it correct that you did not surrender your driver's license until approximately March of 1980?

A. Yes, it is.

Q. Were you in physical possession of your driver's license from the date of this incident?
A. Yes, I was."

Certainly it is clear that as of July 8, 1979, defendant was aware that he was under suspension because on that date defendant was stopped and cited for driving while under suspension by the same officer who has charged him in the instant case. As to the arrest of July 8, 1979, defendant paid

the fine and costs without protest. As this testimony was being considered defendant entered into a stipulation with respect to notice and the colloquy of counsel appears as follows:

"MR. GOODWIN: Your honor, I am not introducing this document to indicate a propensity for guilt in a later incident, I'm introducing this to show knowledge on the part of the defendant only. And on that basis, I ask that it be accepted.

MR. KING: I have no objection to—we will stipulate that there was constructive knowledge of suspension as of July.

THE COURT: You will stipulate that the defendant was aware of this suspension?

MR. KING: He had been told by this officer that he was under suspension and he paid fine and costs for a previous suspension. I am not stipulating that he knew he was in suspension in September nor that the Officer told him in September that he was under suspension."

Defendant testified in his own defense. The court found frequently that his answers were somewhat evasive and the court specifically finds his testimony as to his assertion [equivocal as it may be] that he did not receive notice was not credible under all the circumstances and the court therefore found and finds beyond a reasonable doubt defendant had received notice of his suspension, was aware of it, at least by July 8, 1979 and knew that he was operating in violation of it on September 1, 1979.

This is not a case wherein the only proof of notice was the record of the Commonwealth showing a mailing to a particular address as was the case in Com. v. Kane, 460 Pa. 582, 333 A. 2d 925 (1975). In this case defendant had notice of his prior arrest earlier during the period of suspension and demon-

strated by this conduct with respect to that arrest, that he knew he was under suspension and in fact the defense offered a stipulation to the effect that defendant was aware at least as of July 8, 1979 that he was operating under suspension.

The second contention raised by defendant results from his interpretation of 75 Pa.C.S.A. §1541(a) which paragraph reads as follows: "Commencement of period—The period revocation or suspension of the operating privilege shall commence on the date on which the driver's license was surrendered to and received by the court or the department, as the case may be."

Defendant argues that this must be interpreted to mean that until a driver physically surrenders his operator's license he cannot be charged with operating under suspension because the suspension has not yet happened.

If one applied literally the thesis of defendant, a contumacious driver could, by failing to apprise the Commonwealth of any change of address, completely escape for an indefinite period of time the effect of the order of suspension. In fact in this case defendant did not surrender his operator's license until March of 1980 virtually a year after the effective date of the suspension. The court does not believe that this was the intention of the legislature and rather determines that section 1541(a) simply prescribes [notwithstanding the use of the word "commence"] the method of computation by which the ultimate termination of the period of suspension may be established.*

---

*Note section 1533, 75 Pa.C.S.A. §1533, which illustrates how the legislature if it so intends may enact a grace period between notice and the imposition of suspension. That section reads as follows:

"§1533. Suspension of operating privilege for failure to respond to citation. The department shall suspend the operat-

Defendant attempted to address the problem of the evasive driver in his oral argument before the court as follows:

"MR. KING: The records themselves indicate that it is incumbent upon the Department also to notify the State Police to obtain the license if it is not surrendered, and the record also shows that this was not done in this case, because there is no notation that the State Police were notified in order to obtain the license."

"MR. KING: If a reasonable effort was shown on the part of the Commonwealth to fulfill the obligations which were incumbent upon them under the Code, then if one was able to conceal his whereabouts and evade the authorities in that instance there would have been an alteration in the rule or an exception to the rule, but I believe that it is incumbent upon the Commonwealth to make that effort, otherwise the period does not commence."

Contrary to Mr. King's assertion we note that the record of the Department of Transportation which was admitted without objection indicates, inter alia, that "subject failed to comply with suspesnion [sic] order. State Police out on pick-up as of 5-1-79."

We cannot believe that the legislature intended to

---

ing privilege of any person who has failed to respond to a citation to appear before a court of competent jurisdiction of this Commonwealth or of any state for violation of this title, other than parking, upon being duly notified in accordance with general rules. There shall be 15 days to respond to such notification before suspension is imposed. The suspension shall be for an indefinite period until such person shall respond and pay any fines and penalties imposed. Such suspension shall be in addition to the requirement of withholding renewal or reinstatement of a violator's driver's license as prescribed in section 1503(c) (relating to persons ineligible for licensing)." As amended April 28, 1978, P.L. 202, sec. 13(5), effective June 27, 1978.

reward a stubbornly evasive operator under these circumstances by permitting him through his own illegal and evasive conduct to avoid the impact of the suspension order for an indefinite period of time, nor do we believe the combination of sections 1540(a) and 1541(a) are void on the ground of vagueness which would thereby violate defendant's right to due process. We therefore find that the Commonwealth carried its burden of proof to establish that defendant had notice of the suspension order beyond a reasonable doubt and secondly that the failure, if not refusal, of defendant to surrender his license until March 30, 1980 does not preclude the Commonwealth from charging him with operating under the suspension which was effective April 3, 1979